UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEBRA WALTER,

       Plaintiff,                                  Hon. Richard Alan Enslen

v.                                                 Case No. 1:04-CV-325

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____/

**REPORT AND RECOMMENDATION**

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act.  Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive.

The Commissioner determined that Plaintiff is not disabled as defined by the Act. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **reversed and this matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**.

**STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 48 years of age at the time of the ALJ's decision. (Tr. 15). She possesses a General Educational Development (GED) certificate and was previously employed as an automotive assembler. (Tr. 15, 108).

Plaintiff initially applied for Disability Insurance Benefits and Supplemental Security Income benefits on January 22, 1997, alleging that she had been disabled since March 10, 1995, due to low back pain. (Tr. 54). Plaintiff's applications were denied, after which she requested a hearing before an Administrative Law Judge (ALJ). On November 18, 1999, Plaintiff appeared before ALJ Adrian Sannier, with testimony being offered by Plaintiff and vocational expert, Donald Hecker. *Id.* In a written decision dated December 7, 1999, the ALJ determined that Plaintiff was disabled for a closed period, beginning on March 10, 1995, and ending on July 3, 1996. (Tr. 53-63). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 73-74). Plaintiff did not pursue the matter any further.

Plaintiff again applied for Disability Insurance Benefits on July 9, 2001, alleging that she had been disabled since May 12, 2001, due to low back pain and depression. (Tr. 76-78, 107). Plaintiff's application was denied, after which she requested a hearing before an Administrative Law Judge (ALJ). (Tr. 28-48). On May 14, 2003, Plaintiff appeared before ALJ B. Lloyd Blair, with testimony being offered by Plaintiff and vocational expert, Rick Riedl. (Tr. 221-51). In a written

decision dated June 13, 2003, the ALJ determined that Plaintiff was not disabled as defined by the Act. (Tr. 14-23). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 4-6). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

Before analyzing Plaintiff's claim, the Court must first clarify the boundaries of its subject matter jurisdiction. Following Plaintiff's initial application for benefits in 1997, she was awarded benefits for a closed period. However, Plaintiff did not seek judicial review of the determination that she was not disabled on an ongoing basis.

Except in cases presenting "a colorable constitutional issue," social security claimants are bound by the principles of res judicata. *Drummond v. Commissioner of Social Security*, 126 F.3d 837, 841 (6th Cir. 1997); *see also*, 20 C.F.R. § 404.957(c)(1). Because Plaintiff did not challenge this previous determination, it became the Commissioner's final decision in the matter. *See* 20 C.F.R. § 404.987(a). While such final decisions may be reopened (and thus modified) under certain conditions, *see* 20 C.F.R. § 404.988, Plaintiff has not asserted that she satisfies any such condition, nor has she alleged that her claim presents a colorable constitutional issue warranting a relaxation of the application of res judicata.

Accordingly, the issue of Plaintiff's disability status through December 7, 1999, has been completely adjudicated on the merits to finality, and is not subject to further adjudication. *See McCoy v. Chater*, 81 F.3d 44, 46 (6th Cir. 1995); *see also*, 20 C.F.R. § 416.1450(f) (if a factual issue was previously decided "in a claim involving the same parties. . .the administrative law judge will not consider the issue again, but will accept the factual finding made in the previous determination `or decision unless there are reasons to believe that it was wrong").

4

It must further be recognized that Plaintiff's insured status expired on September 30, 2001. (Tr. 15, 81); *see also*, 42 U.S.C. § 423(c)(1). Accordingly, to be eligible for Disability Insurance Benefits under Title II of the Social Security Act, Plaintiff must establish that she became disabled prior to the expiration of her insured status. *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990). In sum, the time period relevant in the present action is from December 8, 1999, through September 30, 2001.

## MEDICAL HISTORY

On February 26, 1996, Plaintiff underwent back surgery performed by Dr. J. Eric Zimmerman. (Tr. 215-16). Specifically, the doctor performed a left L4-5 microdiskectomy. *Id.* When examined on July 3, 1996, Plaintiff reported that she had experienced "a very significant improvement of her pain." (Tr. 214). Dr. Zimmerman reported that "neurologically [Plaintiff] is well recovered." The doctor concluded that Plaintiff "is capable of being released to sedentary work with [a] sit/stand option and not highly repetitive with a 10-pound lifting limit." *Id.*

On February 16, 2000, Plaintiff was examined by Dr. Marshall Wickens. (Tr. 164). Plaintiff reported that since taking Prozac her crying spells "have greatly diminished." She also reported that she no longer experiences suicidal thoughts. Plaintiff reported that she was not experiencing any side-effects from her medication. Plaintiff was "alert" and "pleasant." Her affect was "appropriate" and she was "in good humor." The doctor concluded that Plaintiff's depression was "improving." *Id.*

On March 29, 2000, Plaintiff was examined by Dr. Wickens. (Tr. 163). Plaintiff reported that her crying spells "have stopped." She again reported that she no longer experiences

5

suicidal thoughts. Plaintiff denied experiencing "any new problems" and reported that her energy level was "gradually improving." Plaintiff's husband reported that Plaintiff's moods "have improved." The doctor concluded that Plaintiff's depression was "improving." *Id.*

A September 20, 2000 examination revealed that Plaintiff's depression was "improved and stable." (Tr. 159).

On January 29, 2001, Plaintiff was examined by Dr. Wickens. (Tr. 123). Plaintiff appeared "pleasant" with "appropriate" affect and the results of a physical examination were unremarkable. She exhibited "strong and symmetric" grip strength and "good" fine motor coordination. Romberg testing was negative and Plaintiff exhibited "good" push and pull with both hands. Plaintiff was diagnosed with (1) menopause, (2) "headaches, probably migraines," and (3) "depression, stable." Plaintiff was prescribed Imitrex[1] for her headaches. *Id.*

On August 3, 2001, Plaintiff's daughter, Amanda Inosencio, completed a questionnaire regarding Plaintiff's activities. (Tr. 88-93). Inosencio reported that on a daily basis Plaintiff cooks, feeds her dogs, watches television, talks on the telephone, loads the dishwasher, and cares for personal needs. (Tr. 88, 90). She also reported that Plaintiff shops, cleans her house, visits with relatives, collects coins and other items, gardens, and spends time with her granddaughter. (Tr. 88, 90-91). Inosencio reported that Plaintiff "does better now with meds." (Tr. 89).

On September 2, 2001, Ronald Marshall, Ph.D. completed a Psychiatric Review Technique form regarding Plaintiff's mental limitations. (Tr. 141-154). Determining that Plaintiff suffered from a depression, the doctor concluded that Plaintiff satisfied the Part A criteria for Section

---

[1] Imitrex is prescribed for the acute treatment of migraine headaches. *Physicians' Desk Reference*, vol. 56 at 1558-59 (2002).

12.04 (Affective Disorders) of the Listing of Impairments. (Tr. 142-50). The doctor determined, however, that Plaintiff failed to satisfy any of the Part B criteria for this particular impairment. (Tr. 151). Specifically, the doctor concluded that Plaintiff suffered mild restrictions in the activities of daily living, mild difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence or pace, and never experienced repeated episodes of decompensation. *Id.*

On September 26, 2001, Plaintiff participated in a consultive examination performed by Dr. R. Scott Lazzara. (Tr. 135-38). Plaintiff reported that she was experiencing back pain which radiated through her left lower extremity. (Tr. 135). She reported that she could sit or stand for approximately 30 minutes, walk about 300 yards, perform her activities of daily living, but was unable to carry anything weighing more than 10 pounds. *Id.*

An examination of Plaintiff's extremities was unremarkable and Plaintiff exhibited mildly reduced range of motion in her lumbar spine. (Tr. 136). She exhibited normal range of motion in her hips, knees, and ankles. (Tr. 136-37). Dr. Lazzara reported that Plaintiff experienced "moderate" difficulty getting on and off the examining table, "moderate" difficulty heel and toe walking, and "severe" difficulty squatting. (Tr. 137). The doctor also observed paravertebral muscle spasm in the left SI joint. Straight leg raising was negative and a neurological examination revealed evidence of left-sided sensory loss at L5-S1. Romberg testing was negative and Plaintiff's motor functioning was "intact." *Id.*

Dr. Lazzara diagnosed Plaintiff with lumbosacral pain, which prevented her from performing "prolonged" lifting, "prolonged" ambulation, and walking "long distances" without the use of a cane. (Tr. 137-38).

On December 16, 2002, Plaintiff was examined by Dr. Thomas Wright. (Tr. 185). Plaintiff reported that she was experiencing "chronic" back pain, "numbness" in her left leg, and "difficulty" walking. She also reported experiencing pain in her forearms when performing grasping activities. Plaintiff reported that her migraines had improved with medication. She also reported that her depression was "under good control" with medication.

An examination of Plaintiff's lower extremities revealed that her "deep tendon reflexes are 1/4 at the patellar bilaterally and the Achilles bilaterally, [with] no atrophy of the legs." An examination of Plaintiff's upper extremities revealed that her "extensor hallucis strength is intact[, but] she has weak grip." The doctor diagnosed Plaintiff with (1) tennis elbow, (2) migraines, (3) chronic low back pain, and (4) depression. *Id.*

On March 3, 2003, Plaintiff participated in a consultive examination conducted by Wayne Kinzie, Ph.D., and Richard King, Ed.D. (Tr. 192-99). Plaintiff reported that, "I don't have much interest in anything anymore. I sit home a lot. I sleep and eat. Once in a while, I do some laundry. I do some cooking, too." (Tr. 193). She also reported that in addition to depression, she experiences "a lot of bad dreams." *Id.* The examiners reported that Plaintiff was "alert" and "able to follow directions and instructions with no observed difficulty." (Tr. 192). Plaintiff's "energy level was appropriate" and her "visual and auditory receptivity to test instructions was intact." *Id.*

Plaintiff was administered the Wechsler Adult Intelligence Scale-III (WAIS-III), the results of which revealed that Plaintiff possesses a verbal IQ of 69, a performance IQ of 74, and a full-scale IQ of 69. (Tr. 194). The examiners reported that this places Plaintiff in the "upper limits of the mentally retarded range of intelligence." *Id.* Additional testing revealed that Plaintiff lacks

"the ability, at this point, to utilize reading, writing or mathematical computation in nay useful manner in a work setting." (Tr. 194-95).

Plaintiff reported that she experiences physical pain which exacerbates her depression. (Tr. 195). Plaintiff was administered the Beck Depression Inventory-2, the responses to which indicated that Plaintiff was experiencing "a number of negative self-feelings, when, in combination, suggest some very significant elevation of depression dynamics." *Id.* The examiners further observed that "while [Plaintiff] does not appear to purposely manufacture pain symptoms, her underlying emotional dynamics may tend to exacerbate those physical symptoms, which are present." (Tr. 196).

Plaintiff was diagnosed with (1) major depressive disorder (recurrent - moderate), and (2) pain disorder associated with both psychological factors and a general medical condition (chronic). Plaintiff's GAF score was rated as 52. *Id.* The examiners concluded that "treatment in the form of antidepressant medication apparently has some value for [Plaintiff], but would not be sufficient enough for her to overcome her psychsomatic/somatoform dynamics nor her physical pain problems." (Tr. 197).

The examiners also completed a Mental Residual Functional Capacity Assessment form regarding Plaintiff's limitations in 20 separate categories encompassing (1) understanding and memory, (2) sustained concentration and persistence, (3) social interaction, and (4) adaptation. (Tr. 198-99). Plaintiff's abilities were characterized as "markedly limited" in four categories and "moderately limited" in six categories. With respect to the remaining 10 categories, the examiners reported that Plaintiff was "not significantly limited." *Id.*

On May 9, 2003, Plaintiff was examined by Dr. Girish Juneja. (Tr. 217-20). Plaintiff reported that she was experiencing lower back pain which radiated into her left lower extremity. (Tr. 217). Plaintiff reported that her pain increases with standing, bending, lifting, walking, and sitting. She reported that her pain "is 9 to 10/10 all the time." *Id.*

The doctor reported that Plaintiff was "not in any type of distress," but "appears uncomfortable" especially "when she moved around." (Tr. 218). Plaintiff used a cane and ambulated with a limp favoring her left lower extremity. An examination of Plaintiff's spine revealed no evidence of spinal deformity. Lumbar and cervical lordosis were both "well maintained." There was evidence of lower back tenderness and Plaintiff exhibited diminished range of motion. *Id.* An examination of Plaintiff's extremities was unremarkable. (Tr. 218-19).

Dr. Juneja concluded that Plaintiff's back pain was mechanical in nature. (Tr. 219). Noting that Plaintiff was seeking disability compensation, the doctor noted that he was unable to rule out "manipulation by the patient." The doctor concluded that Plaintiff could work "4 to 6 hours a day" subject to the following limitations: (1) no lifting more than 10 pounds, (2) sit/stand option, (3) avoid frequent bending/twisting at the lower back. *Id.*

At the administrative hearing Plaintiff testified that she was experiencing back pain and numbness in her left leg. (Tr. 227-29). She also reported experiencing depression and migraine headaches. (Tr. 227-28). Plaintiff testified that she experiences "constant" pain which rates 9 on a scale of 1-10. (Tr. 229). Plaintiff reported that she was only taking extra-strength Tylenol for her pain. *Id.* Plaintiff reported that she was taking medication for her depression, but has never participated in counseling. (Tr. 229-30).

Plaintiff reported that she cannot lift more than 10 pounds, cannot sit or stand for longer than 10-15 minutes, cannot walk further than 300 yards, and cannot perform repetitive bending or twisting activities. (Tr. 227, 230-31). Plaintiff testified that she prepares meals, performs "light" laundry, goes shopping, and watches television. (Tr. 231).

## ANALYSIS OF THE ALJ'S DECISION

### A. Applicable Standards

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[2] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1420(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

---

[2] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

**B. <u>The ALJ's Decision</u>**

The ALJ found that during the period in question Plaintiff suffered from the following severe impairments: (1) degenerative disc disease, (2) migraine headaches, (3) depressive disorder, (4) pain disorder, and (5) low IQ. (Tr. 17). The ALJ determined that these impairments, neither alone nor in combination, satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. *Id.* The ALJ further determined that while Plaintiff was unable to perform her past relevant work, there existed a significant number of jobs which she could perform despite her limitations. (Tr. 19-21). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

### 1. The ALJ's Decision is Not Supported by Substantial Evidence

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

As noted above, the Commissioner has established a five-step disability determination procedure. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

With respect to Plaintiff's residual functional capacity, the ALJ determined that as of the date her insured status expired Plaintiff retained the capacity to perform sedentary work activities subject to the following limitations: (1) she cannot lift/carry more than 10 pounds, (2) no prolonged sitting, standing, or walking, (3) no frequent bending or twisting of the lower back, (4) no more than occasional stooping, crouching, kneeling, crawling, stair/ramp climbing, or using a ladder, and (5) she requires a sit/stand option and a cane for ambulation. (Tr. 19).

With respect to Plaintiff's mental impairments, the ALJ concluded that Plaintiff suffered the following additional limitations: (1) mild restrictions in the activities of daily living, (2) mild difficulties maintaining social functioning, and (3) mild to moderate deficiencies of concentration, persistence, and pace. (Tr. 19-20). Thus, the ALJ concluded that Plaintiff "would be relegated to performing tasks of an unskilled variety." (Tr. 20). After reviewing the relevant medical evidence, the undersigned concludes that the ALJ's determination as to Plaintiff's RFC is supported by substantial evidence.

The ALJ determined that Plaintiff could no longer perform her past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, her limitations notwithstanding. *See Richardson*, 735 F.2d at 964.

While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform specific jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See*

*Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, her limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert Rick Riedl. The relevant exchange is as follows:

> ALJ: Mr. Riedl, if you had a hypothetical individual who can lift a maximum of ten pounds and who can lift frequently less than ten pounds; who should never use ladders; should only occasionally use [INAUDIBLE]; should be no frequent bending and twisting at the low back; who uses a cane to ambulate; and who needs a sit/stand option. Could such an individual do Claimant's past relevant work?
>
> VE: No, your Honor.
>
> ALJ: Sir, if you assume in addition to the prior limitations, the individual has Claimant's vocational profile relative to age, education, and work history. In your opinion, would there be a significant number of jobs in [INAUDIBLE] regional and national economy such a person could perform?
>
> VE: I do believe so, yes.

(Tr. 247-48).

At this point, the vocational expert testified that there existed approximately 47,000 jobs which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 248-49). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988). The ALJ, expressly relying on the vocational expert's testimony, concluded that Plaintiff was not disabled as defined in the Act.

      a.   The ALJ's decision is based upon a faulty hypothetical question

Plaintiff asserts that in making his determination the ALJ relied upon the response to an inaccurate hypothetical question. Specifically, Plaintiff claims that the hypothetical question which the ALJ posed to the vocational expert failed to incorporate any of her "mental/psychological limitations."

While the ALJ may satisfy his burden through the use of hypothetical questions posed to a vocational expert, such hypothetical questions must accurately portray the claimant's physical and mental impairments. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996).

As noted above, the ALJ concluded that Plaintiff suffered from various exertional limitations, but also determined that as a result of her non-exertional impairments she was further limited to "unskilled" work. However, as the exchange quoted above reveals, the hypothetical question which the ALJ posed to the vocational expert failed to incorporate any of Plaintiff's non-exertional limitations. The vocational expert did not indicate whether the jobs he identified were skilled or unskilled. Moreover, as the following exchange between Plaintiff's counsel and the vocational expert reveals, the vocational expert did not take into consideration any non-exertional impairments from which Plaintiff may have been suffering:

> Q: All the jobs that you identified in response to the first hypothetical did not take into account any psychological limitations that Ms. Walter might have [INAUDIBLE] is that fair?
>
> A: That would be correct, yes.

(Tr. 250).

15

Thus, the hypothetical question which the ALJ posed to the vocational expert failed to incorporate all of the limitations which the ALJ specifically determined Plaintiff suffered. Moreover, the ALJ specifically relied on the vocational expert's testimony in determining that Plaintiff was not disabled. This shortcoming is even more significant when considering that according to the ALJ, Plaintiff is limited to less than a full range of sedentary work. As the Social Security Administration recognizes:

> The impact of an RFC for less than a full range of sedentary work is especially critical for individuals who have not yet attained age 50. Since, age, education, and work experience are not usually significant factors in limiting the ability of individuals under age 50 to make an adjustment to other work, the conclusion whether such individuals who are limited to less than the full range of sedentary work are disabled will depend primarily on the nature and extent of their functional limitations or restrictions. . .Under the regulations, "sedentary work" represents a significantly restricted range of work. Individuals who are limited to no more than sedentary work by their medical impairments have very serious functional limitations.

Policy Interpretation Ruling Titles II and XVI: Determining Capability to do Other Work - Implications of a Residual Functional Capacity for Less than a Full Range of Sedentary Work, SSR 96-9p, 1996 WL 374185 at *2-3 (S.S.A., 1996). This Ruling further provides that when a claimant, who is limited to less than the full range of sedentary work, also suffers mental limitations or restrictions, "it may be useful to consult a vocational resource." *Id.* at * 9.

In sum, Plaintiff suffers from "serious functional limitations" that require careful consideration of all the limitations from which she suffers. The ALJ failed in this regard by posing an inaccurate hypothetical question to the vocational expert, the response to which forms the basis for his decision. The Court concludes, therefore, that the ALJ's decision is not supported by substantial evidence.

Defendant asserts that a closer examination of the vocational expert's testimony reveals that there does exist substantial evidence to support the ALJ's decision. Of the various jobs which the vocational expert identified, he included surveillance-system monitor (1,600) and order clerk (5,600). (Tr. 248). The vocational expert further testified that his testimony was based upon and was consistent with the Dictionary of Occupational Titles (DOT). (Tr. 248-49). Defendant claims that according to the DOT, the positions of surveillance-system monitor and order clerk are both unskilled, thus rendering harmless any error regarding the hypothetical question posed to the vocational expert. (Defendant's Brief at 9). A review of the DOT, however, fails to confirm this assertion.

The definitions of these two occupations fail to specifically indicate whether they are considered unskilled work. *See* United States Dep't of Labor, *Dictionary of Occupational Titles*, (4th ed. 1991), §§ 209.567-014, 379.367-010. Each definition in the DOT also contains a "definition trailer" which consists of various "auxiliary profile data." *Id.* at xvii-xxiii. Neither of the definition trailers for these two occupations contains auxiliary profile data specifically indicating whether such positions are unskilled. *Id.* at Appendix C. In sum, the DOT definitions for these two occupations do not specifically provide that such are unskilled in nature. While an *interpretation* of the DOT definitions may lead to the conclusion that these occupations are unskilled, the Court is not permitted to make such interpretations. The Court finds Defendant's argument unpersuasive and, therefore, concludes that the ALJ's decision is not supported by substantial evidence.

      b. Evidence of Plaintiff's disability is not compelling

While the Court finds that the ALJ's decision is not supported by substantial evidence, Plaintiff can be awarded benefits only if proof of her disability is "compelling." *Faucher v. Secretary of Health and Human Serv's*, 17 F.3d 171, 176 (6th Cir. 1994) (the court can reverse the Commissioner's decision and immediately award benefits if all essential factual issues have been resolved and proof of disability is compelling).

While the ALJ's decision is not supported by substantial evidence, neither is the evidence of Plaintiff's disability compelling. While Plaintiff certainly suffers from severe impairments which impose significant limitations, there simply does not exist compelling evidence that she is disabled. In short, the evidence of record is insufficient to support either the Commissioner's position or Plaintiff's position. Accordingly, the Court recommends that this matter be remanded for further factual development pursuant to sentence four of 42 U.S.C. § 405(g).

## **CONCLUSION**

For the reasons articulated herein, the Court concludes that the ALJ's decision is not supported by substantial evidence. The Court further concludes, however, that there does not exist compelling evidence that Plaintiff is disabled. Accordingly, it is recommended that the Commissioner's decision be **reversed** and this matter be **remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure

to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

                                      Respectfully submitted,

Date:  May 24, 2005                              /s/ Ellen S. Carmody  
                                              ELLEN S. CARMODY  
                                              United States Magistrate Judge